UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JAMES SULLIVAN,

                Plaintiff,

v

CITY OF LONG BEACH, GREGORY SCOTT
Individually and as Commissioner of Public
Works, MICHAEL LONGIN Individually and as
Superintendent of the Water Department,
MICHAEL ABRAMSEN Individually and as
Superintendent of the Sewer Department,
ANTHONY CARPENTIERI Individually and as
Assistant Superintendent of the Water
Department, JOHN MOONEY Individually and
as President of CSEA LOCAL 1000 AFSCME,
AFL-CIO, and CITY OF LONG BEACH
UNIT 7569-00, NASSAU COUNTY MUNICIPAL
EMPLOYEES LOCAL 882,

                Defendants.

**COMPLAINT**
**JURY TRIAL DEMANDED**
Docket No.

---

The Plaintiff, James Sullivan, by his attorneys, Law Office of Michael T. Hopkins and Associates, PLLC, as and for his Complaint against the Defendants, City of Long Beach, Gregory Scott, Michael Longin, Michael Abramsen, Anthony Carpentieri, John Mooney, CSEA Local 1000 AFSCME, AFL-CIO, and City of Long Beach Unit 7569-00, Nassau County Municipal Employees Local 882, respectfully set forth and allege that:

**INTRODUCTION**

1. This is an action for equitable relief and monetary damages on behalf of the Plaintiff, James Sullivan, hereinafter referred to as Plaintiff, who was and continues to be deprived of his rights as an employee of the City of Long Beach, as a result of the

1

Defendants, unfair employment practices, disparate treatment, hostile work environment, conspiracy and retaliation.

## JURISDICTION VENUE

2. The jurisdiction of this Court is invoked pursuant to 18 USC § 1965, 28 USC §§ 1331, 1343, and 2202 to secure protection of and redress deprivation of rights secured by 42 U.S. Code 1981, 1983 and 1985 (3).

3. The unlawful employment practices and continued violations of Plaintiff's rights were primarily committed during his employment with the City of Long Beach in the Eastern District of New York. Dependent jurisdiction of the Federal District Court is invoked with respect to Plaintiff's claim under 28 U.S. Code 1367 because the entire action before the Court comprises of one constitutional and civil rights case and the claims arise under the same nucleus of facts and are such that Plaintiff would ordinarily be expected to try them in one jurisdictional proceeding.

## THE PLAINTIFF

4. The Plaintiff is a citizen of the United States of America and resides at 537 East Harrison Street, Long Beach, Nassau County, New York 11561.

5. During all relevant times, Plaintiff was an employee of the Defendant, City of Long Beach (hereafter "CITY"), and worked as a laborer.

6. Plaintiff was also, at all relevant times, a member of CSEA Local 1000 AFSCME, AFL-CIO, and Nassau County Municipal Employees Local 882, City of Long Beach, Unit No. 7569-00 9 (hereafter "UNION"), which was the collective bargaining agent for City employees such as the Plaintiff herein.

2

## THE DEFENDANTS

7. Defendant, CITY OF LONG BEACH, was and still a municipal corporation organized and existing by virtue of the Laws of the State of New York, with its offices located at 1 West Chester Street, Long Beach, New York 11561.

8. Defendant, GREGORY SCOTT at all relevant times was the Commissioner of Public Works for the CITY was a supervisor of Plaintiff.

9. Defendant, MICHAEL LONGIN at all relevant times was and still is the Superintendent of the Water Department for the CITY and was a supervisor of Plaintiff.

10. Defendant, MICHAEL ABRAMSEN at all relevant times was the Superintendent\ of the Sewer Department for the CITY and was a supervisor of the Plaintiff.

11. Defendant, ANTHONY CARPENTIERI at all relevant times was and still is the Assistant Superintendent of the Water Department for the CITY and was a supervisor of the Plaintiff.

12. Defendant, JOHN MOONEY was at all times was and still is President of CSEA Local 1000 AFSCME, AFL-CIO, and CITY OF LONG BEACH Unit No. 7569-00, Nassau County Municipal Employees Local 882 (hereafter "UNION"), of which, Plaintiff was a member.

13. Defendant, JOHN MOONEY was also an employee of the CITY at all relevant times.

14. The UNION at all times was and still is the bargaining agent for City employees such as the Plaintiff.

## BACKGROUND

15. Plaintiff was an employee of the CITY OF LONG BEACH as a laborer since on or about May 1, 2012 until December 11, 2020.

16. Plaintiff was compelled to actively campaign for the Democratic party candidates in the CITY OF LONG BEACH for the elections held in November 2018 and 2020 despite his having different political beliefs.

17. Plaintiff's participation included handing out pamphlets at train stations and delivering pamphlets door to door during his working hours for the CITY OF LONG BEACH.

18. This arrangement was, upon information and belief, co-ordinated between the Defendant MOONEY and the UNION shop stewards in various City departments, including the departments where Plaintiff had worked.

19. In November of 2020, Plaintiff informed his immediate supervisor, Defendant CARPENTIERI, he did not vote for the Democratic candidates for whom he was strongly encouraged to campaign but, in fact, had voted for candidates on the Republican lines.

20. On December 7, 2020, the Plaintiff reported to duty at the City Water Department when he was approached by the acting Superintendent, MICHAEL LONGIN, who told the Plaintiff that he was going to be removed from his position in the Water Department and returned to his previous position in the Sewer Department.

21. Plaintiff had previously transferred to the Highway Department from the Water Department due to an abusive work environment at the Sewer Department.

22. Plaintiff responded to Defendant LONGIN that he had to think about whether his job would still be worth taking since Plaintiff would be returned to the abusive work

environment.

23. It was clear that Plaintiff's revelation that he did not support the Democratic candidates during the elections was the reason that he was returned to the Sewer Department.

24. Despite his many years of work with the City, and without any major disciplinary actions taken against him, Mr. Sullivan was told by Defendant SCOTT on December 7, 2020 that he had "quit" his employment and that his resignation was accepted due to Plaintiff's alleged insubordination to superiors.

25. The exact origin and nature of the alleged insubordination and "quitting" was never made clear to Plaintiff, and no formal charges were ever brought against the Plaintiff for insubordination to his superiors.

26. By letter dated December 11, 2020, Plaintiff was informed by the Defendant GREGORY SCOTT as Commissioner of Public Workers, that Plaintiff had intended to quit employment with the Defendant CITY in order to seek employment elsewhere and that his "resignation" was accepted effective December 11, 2020. The letter summarily terminated Plaintiff's employment. (Exhibit "1")

27. Plaintiff did not quit nor did he have any intent to quit his employment with the CITY.

28. Plaintiff then sought to grieve his unlawful termination with the UNION representing him.

29. Defendant UNION refused to represent Plaintiff in any grievance regarding his alleged resignation, although there was no proof of any resignation.

30. Even after being supplied a tape recording of a telephone conversation between

Plaintiff and Plaintiff's immediate supervisor, Defendant CARPENTIERI wherein the Defendant CARPENTIERI acknowledged that Plaintiff never quit nor submitted a resignation, the UNION still refused to represent the Plaintiff in a grievance against the City regarding his letter of termination.

31.  When Plaintiff expressed to Defendant LONGIN, his displeasure and his desire to stay within the Highway Department, he was told by Defendant LONGIN, that he would finish up the week in the Water Department, then report to the Sewer Department for one month and then return back to the Water Department.

32.  Plaintiff then telephoned Defendant CARPENTIERI, requesting the rest of the week off and told Defendant CARPENTIERI he would be back to work at the Sewer Department Monday, December 14, 2020.

33.  Defendant CARPENTIERI told Plaintiff to report directly to the Sewer Department on December 14 at 7:00 a.m.

34.  After a short conversation regarding whether taking the remainder of the days of the week off would be "comp time" or "sick time", Defendant CARPENTIERI insisted it would be categorized as sick time and the telephone call ended.

35.  On December 14, 2020, Plaintiff reported to the Sewer Department located at 150 Pine Street, Long Beach, New York at 7:00 a.m., as previously ordered by Defendant LONGIN and CARPENTIERI and awaited orders for his assignment.

36.  Upon arriving for work, Plaintiff was called into Shop Steward Steven Johnson's office in the Sewer Department.

37.  Defendants SCOTT, CARPENTIERI, ABRAMSEN, CITY employee Sean O'Neal

and others were present.

38.  Defendant SCOTT told Plaintiff not to speak, but to listen to him. Mr. SCOTT then read a letter dated December 11, 2020 on CITY stationary, in which Defendants claimed that Plaintiff had stated that he was quitting CITY employment for employment elsewhere, and accepting Plaintiff's resignation and therefore, Plaintiff's employment with the CITY had been terminated effective as of December 11, 2020. (Exhibit "1")

39.  Upon reading the letter Plaintiff inquired, "I'm fired?" Defendant SCOTT replied "Yes, have a good day".

40.  At 8:30 a.m. on December 14, 2020, Plaintiff went to see Defendant CSEA President MOONEY at his office to discuss the matter. Defendant MOONEY told Plaintiff to give him the December 11, 2020 letter and that someone would get back to him.

41.  Two weeks later, Defendant LONGIN telephoned Plaintiff and stated that he wanted Plaintiff to come back to work in the Sewer Department.

42.  Plaintiff was told to come to the Sewer Department on Monday, January 4, 2021 at 7:00 a.m. for a meeting with Defendant MOONEY in order to get Defendant MOONEY back on Plaintiff's side.

43.  The same day Plaintiff met with Defendants LONGIN and MOONEY in Mr. MOONEY'S office. Also present was Steven Johnson.

44.  Mr. Johnson told Defendant MOONEY that Plaintiff's termination should not have happened and that Plaintiff had had a prior disagreement with a CITY employee, Kevin Smith an employee in the Sewer Department. Mr. Johnson added that Defendant

ABRAMSEN used that prior disagreement to set the wheels in motion to "get rid off" Plaintiff.

45. Defendant MOONEY responded that this had nothing to do with the prior issue with Mr. Smith but it had to do with Plaintiff indicating that he "felt like quitting if he had to go back to the Sewer Department".

46. Defendant MOONEY then asked Steven Johnson "Why are you objecting to Plaintiff being fired today when you didn't object on December 11, 2020 when the termination was happening." Mr. Johnson responded, "I couldn't go against Commissioner SCOTT."

47. After Defendant MOONEY promised to get to the bottom of the situation and to get legal representation on the Plaintiff's behalf, the January 4, 2021 meeting ended.

48. Later that day, Plaintiff received a call from Defendant CARPENTIERI who said, "I never wanted you fired and I never said that you quit." Part of that conversation was recorded.

49. Plaintiff then filed CITY grievance procedure forms on January 7, 2021 and requested that the UNION represent him. After months of reviewing the situation, the UNION decided it would not represent Plaintiff, as they considered him to have quit, citing that there was no evidence to the contrary.

50. Thereafter, the UNION received a copy of the partial tape recording of the telephone call with Defendant CARPENTIERI (referred to in ¶46 supra), yet the UNION did not change its determination.

51. In the recording, Defendant CARPENTIERI acknowledged he never told anyone

8

that Plaintiff quit his job which was the purported basis for the termination letter dated December 11, 2020. (Exhibit "1")

52. In spite of Steven Johnson's conversation with Defendant MOONEY in which he indicated the termination was wrongful and after receiving a copy of a telephone recording in which Defendant CARPENTIERI acknowledged he did not state Plaintiff quit his job, the CSEA still refused to represent Plaintiff in his grievance.

53. Defendants SCOTT, LONGIN, ABRAMSEN, CARPENTIERI and MOONEY all acting under color of state conspired to deprive Mr. Sullivan of his job.

54. Each Defendant used their positions for the CITY and President of the UNION to deny the Plaintiff of his constitutional rights and to deprive Plaintiff of his job by claiming Plaintiff resigned his employment and by refusing to allow Plaintiff to officially grieve said allegation of resignation, in spite evidence to the contrary.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST the CITY of LONG BEACH, GREGORY SCOTT, MICHAEL LONGIN, MICHAEL ABRAMSEN, ANTHONY CARPENTIERI, JOHN MOONEY, CSEA LOCAL 1000 AFSCME, AFL-CIO, and CITY OF LONG BEACH UNIT 7569-00, NASSAU COUNTY MUNICIPAL EMPLOYEES LOCAL 882 FOR FIRST AMENDMENT RETALIATION IN VIOLATION OF TITLE 42, USC §1983**

55. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 54 as if fully set forth herein.

56. The CITY, through its employees, had actual knowledge in November of 2020 that the Plaintiff was not a supporter of the Democratic candidates for whom he was being forced to campaign.

57. Defendant CARPENTIERI had actual knowledge in November of 2020 that

9

Plaintiff was not a supporter of the Democratic candidates that he was forced to campaign for during his working hours.

58.     In October and November of 2020, Plaintiff actively campaigned during his working hours, as required by his Supervisors, for the Democratic candidates as directed by his Supervisors.

59.     In December of 2020 and later the CITY retaliated against Plaintiff for his political beliefs in not supporting the Democratic candidates for whom he was forced to campaign in November of 2020.

60.     In December of 2020 and later Defendant CARPENTIERI retaliated against Plaintiff for his political beliefs.

61.     In December of 2020 and later Defendant SCOTT retaliated against Plaintiff for his political beliefs.

62.     In December of 2020 and later Defendant LONGIN retaliated against Plaintiff for his political beliefs.

63.     On December 7, 2020 and later Defendant ABRAMSEN retaliated against Plaintiff for his political beliefs when on December 7, 2020, the CITY transferred Plaintiff from his duties in the Water Department, which was part of the Highway Department, to his previous position in the Sewer Department from which he had previously transferred out due to an abusive work environment.

64.     On December 7, 2020 and later Defendant SCOTT transferred the Plaintiff from his position in the Water Department to the Sewer Department in which he had previously left due to an abusive work environment.

10

65. On December 7, 2020 and later Defendant LONGIN transferred the Plaintiff from his position in the Water Department to the Sewer Department which he had previously left due to an abusive work environment.

66. On December 7, 2020 and later Defendant ABRAMSEN transferred the Plaintiff from his position in the Water Department to a less desirable position in the Sewer Department from which he had left due to an abusive work environment.

67. The transfer of the Plaintiff from the Water Department to the less favorable Sewer Department from which he had left due to an abusive work environment, was an adverse employment action taken against Plaintiff for his lack of support for the Democratic candidates.

68. The transfer of Plaintiff to the less favorable position in the Sewer Department of which he had left due to an abusive work environment was a demotion.

69. The Plaintiff's political views not supporting the Democratic candidates was the motivating factor in the CITY'S transfer of the Plaintiff from the Water Department to the less favorable position in the Sewer Department from which he had left due to an abusive work environment.

70. Plaintiff's political positions were the motivating factor in Defendant SCOTT'S decision to transfer Plaintiff to the less favorable position.

71. Plaintiff's political views was the motivating factor in Defendant LONGIN'S decision to transfer Plaintiff to the less favorable position in the Sewer Department.

72. Plaintiff's political views were the motivating factor in Defendant ABRAMSEN'S decision to transfer Plaintiff to a less favorable position in the Sewer Department.

11

73. The actions of the CITY, SCOTT, LONGIN, ABRAMSEN, CARPENTIERI and each of them individually, have engaged in action, conduct and abuses which violate and deny the Plaintiff his rights as provided to him under the First and Fourteenth Amendments of the United States Constitution to be free of retaliation for his political beliefs.

74. The CITY, SCOTT, LONGIN, ABRAMSEN and CARPENTIERI'S conduct, and actions were intentional, malicious, taken with deliberate indifference and/or reckless disregard for the natural and probable consequences, and without lawful justification or reason.

75. Defendants SCOTT, LONGIN, ABRAMSEN, MOONEY and CARPENTIERI conduct, and actions constituted, and were in conformity with the policies, practices and/or customs of the CITY and were committed by individuals who were the final policy makers and acting under color or law.

76. Defendants SCOTT, LONGIN, ABRAMSEN, MOONEY and CARPENTIERI failed to intervene or prevent or correct the conduct of the actions that deprived Plaintiff of his constitutional rights.

77. The CITY, SCOTT, LONGIN, ABRAMSEN, MOONEY and CARPENTIERI failed in their obligations owed to Plaintiff, not to engage in conduct and actions that deprived Plaintiff of his constitutional rights.

78. Because of Plaintiff's beliefs and lack of support for the Democratic candidates as detailed above, he has been treated differently from other employees of the CITY.

79. As a direct result of the Defendants' unlawful and malicious actions, Plaintiff has suffered and continues to suffer loss of income, fear, anxiety, physical injury, severe

12

humiliation, loss of professional standing, shame, embarrassment, mental anguish, emotion al distress, emotional pain and suffering, loss of his usefulness to the public and loss of enjoyment of life.

80. As a result of the Defendants' retaliatory acts, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as well as damages for mental anguish and humiliation, and the Plaintiff is entitled to damages sustained to date and expected to continue into the future in excess of $1,000,000.00 as well as punitive damages, costs and attorney's fees.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE CITY OF LONG BEACH, GREGORY SCOTT, MICHAEL LONGIN, MICHAEL ABRAMSEN, ANTHONY CARPENTIERI, JOHN MOONEY, CSEA LOCAL 1000, AFSCME, AFL-CIO AND THE CITY OF LONG BEACH UNIT 7569-00, NASSAU COUNTY MUNICIPAL EMPLOYEES LOCAL 882 FOR FOURTEENTH AMENDMENT RETALIATION AND VIOLATION OF 42 U.S. CODE § 1983**

81. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through and including 80 as fully set forth herein.

82. The CITY had knowledge that Plaintiff was a strong political supporter of candidates who were not the Democratic candidates for election in November of 2020.

83. Defendant SCOTT had actual knowledge that the Plaintiff was a strong political supporter of candidates who were not the Democratic candidates who were elected in November of 2020.

84. Defendant LONGIN had actual knowledge that Plaintiff was a strong political support of candidates who were not the Democratic candidates up for election in November of 2020.

85. Defendant ABRAMSEN had actual knowledge that the Plaintiff was a strong political supporter of the candidates who were not the Democratic candidates up for election in November of 2020.

86. Defendant CARPENTIERI had actual knowledge that Plaintiff was a strong political supporter of candidates who were not the Democratic candidates up for election November of 2020.

87. Defendant MOONEY, had actual knowledge that Plaintiff was strong political supporter of candidates who were not the Democratic candidates up for election November of 2020.

88. Defendant UNION Local had actual knowledge that the Plaintiff was a strong political supporter of candidates who were not the Democratic candidates up for election in November of 2020.

89. From November of 2020 and continuing through present, all of the Defendants had knowledge that Plaintiff did not support Democratic candidates who were up for election in November of 2020.

90. Beginning December of 2020, and continuing through present, the Defendants have retaliated against the Plaintiff for his political views in not supporting the Democratic candidates that were up for election in November of 2020.

91. On November 14, 2020, Defendant CITY terminated Plaintiff for his political beliefs and for his not supporting the Democratic candidates who were up for election in November of 2020.

92. Plaintiff had not voluntarily resigned.

14

93. The Plaintiff's political views were the motivating factor in the decision by the individual Defendants, the CITY and UNION when he was demoted Plaintiff from the Water Department to the Sewer Department.

94. The Plaintiff's political views was the motivating factor in Defendants claim that Plaintiff resigned from his position with the CITY.

95. The CITY, SCOTT, LONGIN, ABRAMSEN, CARPENTIERI, MOONEY and UNION Local collectively and each one of them individually, having engaged in action, conduct and abuses which violate and deny Plaintiff his rights provided to him under the Fourteenth Amendment of the United States Constitution violating his Fourteenth Amendment rights of freedom from retaliation for affiliating and participating in political activities.

96. The CITY, SCOTT, LONGIN, ABRAMSEN, CARPENTIERI, MOONEY'S conduct, and actions were intentional, malicious, taken with deliberate indifference and/or reckless disregard for the natural and probable consequences of their actions and without lawful justification or reason.

97. CITY, SCOTT, LONGIN, ABRAMSEN, CARPENTIERI and MOONEY'S conduct, and actions constituted and were in conformity with the policies, practices and/or customs of the CITY and were committed by individuals who were the final policy makers and/or acting under color of law.

98. Defendants MOONEY, and UNION failed to intervene, prevent or correct the conduct of the actions which deprived the Plaintiff of his constitutional rights.

99. Defendant CITY, SCOTT, LONGIN, ABRAMSEN, MOONEY and CARPENTIERI failed to adhere to their obligations of the Plaintiff not to engage in conduct and actions that

deprived Plaintiff of his constitutional rights.

100. Because of Plaintiff not supporting democratic candidates for election in November 2020, and because he has exercised his First Amendment right to support political activities he believed in, as detailed above, he has been treated differently than other employees in the CITY as well as the UNION.

101. As a direct result of the CITY'S OF LONG BEACH, SCOTT'S, LONGIN'S, ABRAMSEN, and CARPENTIERI'S, unlawful actions, Plaintiff has suffered and continues to suffer loss of income, fear, anxiety, physical injury, severe humiliation, loss of professional standing, shame, embarrassment, mental anguish, and emotional distress, emotional pain and suffering, loss of his usefulness to the public and loss of enjoyment of life.

102. As a result of the Defendants' retaliatory acts, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as well as damages for the mental anguish and humiliation and that Plaintiff is entitled to damages sustained to date and continuing in excess of $1,000,000.00 as well as punitive damages, costs, and attorney's fees.

### AS AND FOR OUR THIRD CAUSE OF ACTION AGAINST THE CITY OF LONG BEACH, SCOTT, LONGIN, ABRAMSEN, CARPENTIERI, MOONEY, CSEA LOCAL 10000 AFSCME, AFL-CIO AND CITY OF LONG BEACH UNIT 7596-00, NASSAU COUNTY MUNICIPAL EMPLOYEES LOCAL 882

103. As a result of the Defendants conspiring with Defendant James MOONEY and the UNION, the UNION refused to support a grievance against the CITY OF LONG BEACH

in order to protect Plaintiff's job.

104. As a result of the Defendants' unlawful actions, Plaintiff suffers and continues to suffer loss of income, fear, anxiety, physical injury, severe humiliation, loss of professional standing, shame, embarrassment, mental anguish, emotional distress, emotional pain and suffering, loss of his usefulness to the public and loss of enjoyment of life.

105. As a result of the Defendants' acts, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as well as damages for mental anguish and humiliation and that the Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of $1,000,000.00 as well as punitive damages, costs and attorney's fees.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants as follows:

(a) Declaring that the practices complained of herein are unlawful;

(b) All damages, including without limitation liquidated damages, which Plaintiff has sustained as a result of the Defendants' conduct including back pay, front pay, general and special damages for lost compensation and in an amount to be determined by the trier of fact, job benefits he would have received but for Defendants' improper practices;

(c) All damages which the Plaintiff has sustained as a result of Defendants' conduct, including general and special damages for job benefits he would have received but for the Defendants' improper practices, in an amount to be determined by the trier of fact;

(d) An award to Plaintiff of compensatory damages, including but not limited to

damages for emotional pain, physical pain and suffering, humiliation, embarrassment, and damage to reputation, character and standing within the community, in an amount to be determined by the trier of fact;

(e) Exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless and/or intentional acts where appropriate and permitted by law;

(f) Awarding Plaintiff costs and disbursements incurred in connection with this Action, together with interest at the statutory rate;

(g) Awarding the Plaintiff reasonable attorneys' fees, expert witness fees, and other costs.

Dated: Garden City, New York
February 28, 2022

Respectfully submitted,

MICHAEL T. HOPKINS & ASSOCIATES, PLLC

*T. H*

Michael T. Hopkins, Esq.
Attorneys for the Plaintiff
11399 Franklin Avenue, Suite 201
Garden City, New York 11530
(516) 747-4770