UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
JAMES SULLIVAN,

                              Plaintiff,

        -against-

CITY OF LONG BEACH, GREGORY
SCOTT Individually and as Commissioner
of Public Works, MICHAEL LONGIN,
Individually and as Superintendent of the
Water Department, MICHAEL ABRAMSEN
Individually and as Superintendent of the
Sewer Department, ANTHONY CARPENTIERI
Individually and as Assistant Superintendent
of the Water Department, JOHN MOONEY
Individually and as President of CSEA
LOCAL 1000 AFSCME, AFL-CIO, and
CITY OF LONG BEACH UNIT 7569-00,
NASSAU COUNTY MUNICIPAL
EMPLOYEES LOCAL 882,

                              Defendants.
----------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 22–1163 (DG)(AYS)

**SHIELDS, Magistrate Judge,**

      Plaintiff James Sullivan ("Sullivan" or "Plaintiff"), commenced this action against <u>inter alia</u> John Mooney ("Mooney"), Individually and as President of CSEA Local 1000 AFSCME, AFL-CIO, and City of Long Beach Unit 7569-00, Nassau County Municipal Employees Local 882 (the "Union") as well as the City of Long Beach (the "City") (collectively "Defendants"), alleging that Defendants retaliated against him in violation of the First and Fourteenth Amendments in violation of 42 U.S.C. § 1983.

      Presently before this Court, upon referral by the Honorable Diane Gujarati for Report and Recommendation, <u>see</u> Order dated 10/28/2022, is Mooney's motion to dismiss the Complaint.

1

See Docket Entry ("DE") [15]. As discussed below, this Court respectfully recommends that the motion to dismiss be granted in part and denied in part.

## BACKGROUND

I.   Documents Considered

As is required in the context of this motion to dismiss, the factual allegations in the Complaint, though disputed by Defendant, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of the Plaintiff.

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the Complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effects of which the Complaint "relies heavily" and which are, thus, rendered "integral" to the Complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002); see Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).  Moreover. "[a] court may take judicial notice of documents filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing Ass'n Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

The Court turns now to discuss the facts set forth in Plaintiff's Complaint, construed in his favor.

II.  Facts

    A.  Background

    1.  The Relevant Parties

Plaintiff was employed by the City of Long Beach as a laborer from May 1, 2012 through December 11, 2020. Complaint ("Compl.") ¶¶ 5, 15, DE [1]. Plaintiff was also a member of CSEA Local 1000 AFSCME, AFL-CIO, and Nassau County Municipal Employees Local 882, City of Long Beach, unity No. 7569-00 (the "Union"), which was the collective bargaining agent for City employees. Id. ¶¶ 6, 14.

Defendant Mooney was, and still is, the president of the Union. Compl. ¶ 12. Mooney was also an employee of the City. Id. ¶ 13.

    2.  The Termination

Plaintiff alleges that he was compelled to actively campaign for democratic party candidates in the City for the elections held in 2018 and 2020, despite having different political beliefs. Id. ¶ 16. Plaintiff claims that his participation included handing out pamphlets at train station as well as door to door during his work hours. Id. ¶ 17. Plaintiff alleges that the campaigning was coordinated between Mooney and Union shop stewards. Id. ¶ 18. In November of 2020, Plaintiff told Defendant Anthony Carpentieri ("Carpentieri"), the Assistant Superintendent of the City's Water Department, that he had voted for candidates on the Republican lines and not the Democratic candidates that he was encouraged to campaign for. Id. ¶¶ 11, 19.

On December 7, 2020, Defendant Michael Longin ("Longin"), the Acting Superintendent of the City's Water Department, told Plaintiff that he would be returning to a position he previously held at the Sewer Department. Id. ¶¶ 9, 20. Plaintiff had recently transferred to the

3

Highway Department from the Water Department due to an abusive work environment at the Sewer Department. Id. ¶ 21. Plaintiff responded to Longin that he had to think about whether the job at the Sewer Department would be worth taking because of the abusive environment. Id. ¶ 22. On December 7, 2020, Defendant Gregory Scott ("Scott"), the City's Commissioner of Public Works, informed Plaintiff that Plaintiff had "quit" his job and that his resignation was accepted due to Plaintiff's alleged insubordination to superiors. Id. ¶¶ 8, 24. On December 11, 2020, Scott sent Plaintiff a letter stating that Plaintiff had intended to quit employment with the City in order to seek employment elsewhere and that his "resignation" was accepted effective December 11, 2020. Id. ¶ 26. Plaintiff claims he never resigned his employment with the City, nor did he have any intent to resign. Id. ¶ 27.

    3.    The Failed Grievance Attempt

Plaintiff sought to grieve the City's determination that he resigned and alleges that the Union refused to represent him. Compl. ¶¶ 28-29. Plaintiff supplied the Union with a tape recording of a telephone conversation between Plaintiff and Carpentieri during which Carpentieri acknowledges that Plaintiff never quit or resigned from his employment with the City. Id. ¶ 30.

Plaintiff told Longin that he wanted to stay in the Highway Department. Compl.¶ 31. Longin told Plaintiff that he would finish the week in the Water Department, then report to the Sewer Department for a month and then return to the Water Department. Id. ¶ 31. Plaintiff then informed Carpentieri that he was requesting the week off and would report to the Sewer Department on December 14, 2020. Id. ¶ 32. Carpentieri told Plaintiff to report to the Sewer Department on December 14, 2020, at 7:00 a.m. Id. ¶ 33. Carpentieri then told Plaintiff that his leave would be categorized as sick leave. Id. ¶ 34.

4

On December 14, 2020, Plaintiff reported to the Sewer Department, at which time he was called into the Shop Steward's office. Compl.¶ 36. Scott, Carpentieri, Michael Abramsen ("Abramsen"), the Superintendent of the Sewer Department, and Sean O'Neal, another City employee, and others were present. Id. ¶ 37. Scott told Plaintiff not to speak and proceeded to read the December 11, 2020 letter. Id. ¶ 38. Plaintiff asked, "I'm fired?" to which Scott replied, "[y]es, have a good day." Id. ¶ 39. Plaintiff then went to see Mooney, who requested the letter from Scott and told Plaintiff someone would get back to him. Id. ¶ 40. Two weeks later, Longin called Plaintiff over the phone to tell him that he wanted Plaintiff to return to work at the Sewer Department. Id. ¶ 41. Plaintiff was told to come to the Sewer Department on January 4, 2021, at 7:00 a.m. to meet with Mooney to get Mooney back on his side. Id. ¶ 42.

Plaintiff met with Mooney, Longin and the shop steward. Compl. ¶ 43. The shop steward told Mooney that Plaintiff should not have been terminated and that Plaintiff had a prior disagreement with an employee in the Sewer Department and Abramsen used that to "'get rid of' Plaintiff." Id. ¶ 44. Mooney responded that this situation had nothing to do with the prior disagreement with the other Sewer Department employee, but was the result of Plaintiff indicating that he "'felt like quitting if he had to go back to the Sewer Department.'" Id. ¶ 45. Mooney then asked the shop steward why he didn't object on December 11, 2020. Id. ¶ 46. The shop steward responded that he "couldn't go against Commissioner Scott." Id. ¶ 46. Mooney promised to get to the bottom of the situation and get the Plaintiff legal representation. Id. ¶ 47. Later that day, Plaintiff spoke with Carpentieri, who Plaintiff recorded saying, "I never wanted you fired and I never said that you quit." Id. ¶ 48.

On January 7, 2021, Plaintiff filed grievance forms and requested that the Union represent him. Compl. ¶ 49. After months of reviewing the situation, the Union decided it would

5

not represent Plaintiff and considered him to have quit his employment. Id. ¶ 49. Following the determination, the union received a copy of the partial tape recording of the telephone call between Plaintiff and Carpentieri, but did not change its determination. Id. ¶ 50.

    B.    Procedural History

Plaintiff commenced this action on March 3, 2022. See generally Compl. On April 11, 2022, Mooney requested a pre-motion conference in anticipation of filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See DE [12]. On April 26, 2022, the Court waived its premotion conference requirement, granted Mooney leave to move to dismiss and issued a briefing schedule. See Order dated 04/26/2022. On July 19, 2022, Mooney filed a motion to dismiss Plaintiff's complaint.[1] See DE [15].

On July 25, 2022, the undersigned held an initial conference and issued a Tier I discovery schedule. See Scheduling Order dated 07/25/2022. On October 25, 2022, following completion of the Tier I discovery schedule, the undersigned issued a Tier II discovery schedule. See Discovery Scheduling Order dated 10/25/2022. On October 28, 2022, the Honorable Diane Gujarati referred the motion to dismiss to the undersigned for report and recommendation. See Order Referring Motion dated October 28, 2022.

III.    The Motion to Dismiss

Mooney moves to dismiss all claims. Mooney asserts that Plaintiff cannot maintain a 42 U.S.C. § 1983 ("§ 1983") claim for First Amendment retaliation because Mooney, as the Union president, is not a state actor. Mooney also argues that Plaintiff's § 1983 claim for Fourteenth

---

[1] On July 12, 2022, prior to the filing of the instant motion, this case was transferred to the Honorable Diane Gujarati.

Amendment retaliation fails because Plaintiff has failed to allege a complaint of discrimination. Finally, Mooney also contends that Plaintiff's state law claim fails.

The Court now turns to the merits of the motion.

## DISCUSSION

I.  Legal Principles: Standards Applicable on Motions to Dismiss

A.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading sufficient factual content to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).

With these standards in mind, the Court turns to assess the viability of Plaintiffs' claims.

II.  Failure to State a Claim

    A.  First Amendment Retaliation

To state a First Amendment retaliation claim, a plaintiff must allege that: (1) her "speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech." Cox v. Warwick Valley Central Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011) (citations

7

omitted). In this context, an "adverse action" is "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Id. at 273; see also Dorsett v. Cty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) (noting that a First Amendment retaliation plaintiff must "show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm" and collecting cases).

    1.  State Actor

It is well-settled that a plaintiff alleging a violation of their constitutional rights under Section 1983 must show state action. Fabrikant v. French, 691 F.3d 193, 206 (2d Cir. 2012); see also 42 U.S.C. § 1983 (imposing liability on persons who act "under color of any [state] statute, ordinance, regulation, custom, or usage"). While private parties generally are not state actors, their conduct can be attributed to the state for Section 1983 purposes if "(1) the State compelled the conduct [the "compulsion test"], (2) there is a sufficiently close nexus between the State and the private conduct [the "joint action test" or "close nexus test"], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the state [the "public function test"]." Hogan v. A.O. Fox Mem'l Hosp., 346 F. App'x 627, 629 (2d Cir. 2009) (summary order) (citing Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008)). The "fundamental question" for each test is whether the private party's conduct is "fairly attributable" to the state such that it bears responsibility. Fabrikant, 691 F.3d at 207.

To act under color of state law, "it is enough that the private party is a willful participant in joint action with the State or its agents." Forbes v. City of New York, No. 05-cv-7331, 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (quoting Dennis v. Sparks, 449 U.S. 24, 27, 101 S.

8

Ct. 183, 66 L. Ed. 2d 185 (1980)) (brackets omitted). The "touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy'" shared by the private actor and the State. Id., 2008 WL 3539936, at *5. Here, the Complaint alleges that Longin, the Superintendent of the Water Department, called Plaintiff and told him to go to the Sewer Department on January 4, 2021 for a meeting with Mooney to get Mooney back on Plaintiff's side. Compl. ¶ 42. The Complaint further alleges that Plaintiff then met with Mooney, Longin and the shop steward on January 4, 2021, and the shop steward explained to Mooney Plaintiff's past disagreement with the other City employee at the Sewer Department and how that incident was being used to set the wheels in motion to get rid of Plaintiff. Id. ¶¶ 43-44. Mooney acknowledged that Plaintiff had been terminated but responded that it had nothing to do with the incident with the other employee, rather it had to do with Plaintiff indicating that he felt like quitting if he had to return to the Sewer Department. Id. ¶ 45. The meeting ended with Mooney promising Plaintiff legal representation and that he would get to the bottom of the situation. Id. ¶ 47. While thread bare, at this stage of the litigation these allegations plausibly allege that Mooney engaged in joint action with the City. As alleged by Plaintiff, Longin arranged and was present at the meeting with Mooney, during which Mooney acknowledged Plaintiff's termination and promised Plaintiff legal representation and help with figuring out the situation. Neither of which transpired. Cf. Mercer v. Schriro, 337 F. Supp. 3d 109, 147–48 (D. Conn. 2018) (finding the plaintiff had plausibly alleged that "there was an agreement" between private parties and state by virtue of "concerted and overt acts," including a closed-door meeting).

In sum, at the pleading stage, Plaintiff has set forth a plausible claim that Mooney engaged in joint action, agreeing and/or conspiring with the City to terminate Plaintiff.

9

2. First Amendment Political Retaliation

"[A plaintiff's] political retaliation claims are analyzed in the same manner as all First Amendment retaliation claims." Lorusso v. Borer, 359 F. Supp. 2d 121, 130–31 (D. Conn. 2005) (citing Konits v. Valley Stream Cent. High Sch. Dist., 394 F.3d 121, 124 (2d Cir. 2005)). Affiliating oneself with a political party is protected against retaliation by the First Amendment. See Elrod v. Burns, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed.2 d 547 (1976) (ruling that political affiliations are constitutionally protected from government retaliation); Gronowski v. Spencer, 424 F.3d 285, 292 (2d Cir. 2005) ("A public employee generally may not be dismissed on account of her party affiliation, because such action violates the employee's First Amendment rights absent a showing that 'party affiliation is an appropriate requirement for the effective performance of the public office involved.'" (quoting Branti v. Finkel, 445 U.S. 507, 518, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980))); Camacho v. Brandon, 317 F.3d 153, 160–61 (2d Cir. 2003) (differentiating the protected affiliations of low-level political employers from the unprotected affiliations of policymakers); Kaluczky v. City of White Plains, 57 F.3d 202, 208 (2d Cir. 1995) ("As a general rule, public employees may not be dismissed for the exercise of their First Amendment rights.").

At the pleading stage, Plaintiff has alleged a claim of First Amendment retaliation. Plaintiff alleges that he was compelled to campaign for Democratic party candidates for the 2018 and 2020 elections by Mooney and various shop stewards. Compl. ¶¶ 16-18. In November 2020, Plaintiff informs Carpentieri, his immediate supervisor, that he did not vote for the Democratic candidates, but, rather, had voted for Republican candidates. Id. ¶ 19. On December 7, 2020, Plaintiff was informed that he was being transferred to a different department. Id. ¶ 20. While Plaintiff does not allege that the transfer is an adverse employment action, Plaintiff does claim

10

that what occurs next is. Plaintiff claims that when told of the transfer, he expressed uncertainty with regard to working at the new assignment. Id. ¶ 22. On December 11, 2020, Plaintiff was informed that he had quit his employment. Id. ¶ 26. Whether Plaintiff's political preferences were a factor in the termination of Plaintiff's employment and Mooney's failure to pursue the grievance are factual disputes which are premature to decide. Todd v. Exxon Corp., 275 F.3d 191, 203 (2d Cir. 2001) ("[F]act specific question[s] cannot be resolved on the pleadings."). Whether Plaintiff's theories hold merit remains to be seen.

As such, it is respectfully recommended that Mooney's motion to dismiss the First Amendment retaliation claim be denied.

> B.  Fourteenth Amendment Retaliation Claim

To establish a *prima facie* case of unlawful retaliation under § 1983, "an employee must show that (1) he [or she] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 24 (2d Cir. 2014) (internal quotation marks omitted); see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 91 (2d Cir. 2015) ("[f]or a retaliation claim under § 1983 to survive ... a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination."). "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." Smith v. Cty. of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015) (citing Cobb v. Pozzi, 363 F.3d 89, 108 (2d Cir. 2004)).

11

Based upon the allegations in the Complaint, it appears that Plaintiff is attempting to argue that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated when he was "treated differently than other employees in the City as well as the Union." Compl. ¶ 100. Plaintiff seems to allege that due to his failure to support democratic political candidates he was terminated, and his grievance not filed.

1. Class-of-One Claim

A class-of-one discrimination claim is premised on the theory that an employer treated "one employee differently from others similarly situated, regardless of whether the different treatment is based on the employee's membership in a particular class." Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 597, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008). Because this case arises in the context of public employment, Plaintiff's class-of-one discrimination claim is foreclosed by the Supreme Court's decision in Engquist v. Oregon Department of Agriculture. 553 U.S. at 597, 128 S. Ct. 2146. In Engquist, the Supreme Court held that a public employee who had been terminated was barred from bringing a class-of-one Equal Protection claim against their public employer because allowing such claims "would impermissibly constitutionalize the employee grievance." Id. Engquist applies with equal force here, and so to the extent that Plaintiff is alleging a class-of-one retaliation claim, it must be dismissed. See id.

2. Class-Wide Claim

To prevail on his selective enforcement claim, Plaintiff must plausibly allege that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Crowley v. Courville, 76 F.3d 47, 52–53 (2d Cir. 1996).

Under this standard, Plaintiff's selective enforcement claim falters because he does not plead any "similarly situated" individuals who were treated more favorably on the basis of their political preferences. See Arteta v. Cty. of Orange, 141 F. Appx 3, 8 (2d Cir. 2005). Plaintiff has failed to allege the existence of any complaint or any preferential treatment of any similarly situated employees by Mooney. The Complaint is devoid of any facts to suggest that Plaintiff was treated less favorably because of his political preferences. The Complaint, instead, refers to being "treated differently than other employees in the City as well as the Union." Compl. ¶ 100. These comparisons, however, do not demonstrate that Plaintiff was treated less favorably because of his political preferences - which is the protected class at issue.

In other words, even if it is true that other City employees and Union members were treated more favorably than Plaintiff, for similarly situated misconduct, the Court cannot plausibly infer that this disparity resulted from their political preferences. For that reason, to the extent that Plaintiff is alleging a class-wide retaliation claim, it must be dismissed.

Accordingly, it is respectfully recommended that Plaintiff's Fourteenth Amendment retaliation claim be dismissed.

  C. State Law Claim

While hard to discern from the Complaint, Plaintiff's opposition to the instant motion clarifies that his Third Cause of Action is for prima facie tort. See Brief of Plaintiff ("Pl. Br.") at 9[2], DE [16-3].

  1. Prima Facie Tort

---

[2] For ease of reference, page numbers referenced herein are numbers assigned to pages on electronically filed documents, and not to the underlying documents themselves except for page numbers referenced in cases.

13

The four elements for a prima facie tort in New York State are: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful. Restis v. Am. Coal. Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 730 (S.D.N.Y. 2014) (citing Ross v. Mitsui Fudosan, Inc., 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998) (citing Curiano v. Suozzi, 63 N.Y.2d 113, 480 N.Y.S. 2d 466, 469, 469 N.E. 2d 1324 (N.Y. 1984))).

"The first element requires 'disinterested malevolence,' which means that 'the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm.'" Hall v. City of White Plains, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002) (quoting Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 571 (2d Cir. 1990)). Accordingly, "motives other than disinterested malevolence, 'such as profit, self-interest, or business advantage' will defeat a *prima facie* tort claim." Twin Labs., 900 F.2d at 571 (internal citations omitted).

Prima facie tort is a highly disfavored cause of action in New York. Restis, 53 F. Supp. 3d at 730 n.15 ("The Court notes that *prima facie* tort is a "highly disfavored" cause of action in New York."); Hall, 185 F. Supp. 2d at 304 (same); Nevin v. Citibank, N.A., 107 F. Supp. 2d 333, 347 (S.D.N.Y. 2000) (stating that *prima facie* tort is "highly disfavored in New York" and that "it is well settled that any claim covered by a traditional tort claim cannot be the basis of a *prima facie* tort—even if the traditional tort claim turns out not to be viable").

"The doctrine of prima facie tort was developed to provide a remedy for injurious intentional conduct that does not fall within the categories of the traditional torts." Mckenzie v. Dow Jones & Co., 355 F. App'x 533, 535 (2d Cir. 2009), quoting, 103 N.Y. Jur. 2d Torts,

14

Section 21 (2009). "[P]rima facie tort is not a 'catch-all' alternative for every cause of action that fails to establish the elements of traditional torts." Id. at 536.

Plaintiff's prima facie tort claim fails. The Complaint alleges that "after months of reviewing the situation, the Union decided it would not represent Plaintiff, as they considered him to have quit, citing that there was no evidence to the contrary." Compl. ¶ 49.

> [T]he plaintiff must allege that malevolence is the sole motive for the defendant's otherwise lawful act or ... unless the defendant acts from disinterested malevolence ... by which is meant that the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another. Where the plaintiff merely pleads intentional and malicious action, but not that the defendant's sole motivation was disinterested malevolence, the complaint will be dismissed.

T.S. Haulers, Inc. v. Town of Riverhead, 190 F. Supp. 2d 455, 465-66 (E.D.N.Y. 2002) (internal quotations and citations omitted). Plaintiff has alleged another basis other than disinterested malevolence for the Union's failure to represent him. Thus, on its face, Plaintiff's claim fails.

Further, Plaintiff has failed to allege special damages with any specificity. "[S]pecial damages must be alleged with sufficient particularity to identify actual losses and round sums without any attempt at itemization are insufficient." Discover Group v. Lexmark Int'l, Inc., 333 F. Supp. 2d 78, 87 (E.D.N.Y. 2004). Nowhere does Plaintiff identify or quantify the "special damages" sought.

Accordingly, it is respectfully recommended that because the Complaint fails to allege special damages or malevolence, that the claim for prima facie tort be dismissed.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Mooney's motion to dismiss, found at docket entry No. 15 herein, be granted in part and denied in part. Specifically, this Court recommends that: (1) Mooney's motion to dismiss Plaintiff's First Amendment

15

Retaliation claim be denied; (2) Mooney's motion to dismiss Plaintiff's Fourteenth Amendment Retaliation claim be granted; and (3) Mooney's motion to dismiss Plaintiff's state law cause of action for prima facie tort be granted.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
       February 15, 2023

                                                            /s/ Anne Y. Shields
                                                            Anne Y. Shields
                                                            United States Magistrate Judge